UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY KLINKHAMMER, ) | |
| ) | |
| Plaintiff, ) | No. 1:17-cv-04943 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| ENHANCED RECOVERY COMPANY, LLC ) | |
| a/k/a ERC and ENHANCED RESOURCE ) | |
| CENTER, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Amy Klinkhammer filed this suit against Enhanced Recovery Company, LLC, alleging that it engaged in unlawful debt-collection practices under the Fair Debt Collection Practices Act (FDCPA) and made unlawful calls to her cell phone under the Telephone Consumer Protection Act (TCPA).[1] R. 1, Compl.[2] After discovery, Plaintiff moved to voluntarily dismiss the case, which the Court entered with prejudice. R. 48, 06/07/18 Tr. at 8:14-25; R. 40. Enhanced Recovery now moves for attorneys' fees, invoking three sources of authority: 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1927, and this Court's inherent powers. R. 45, Mot. Fees. For the reasons explained below, Enhanced Recovery's motion is denied.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.
[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

1

## I. Background

In June 2017, Klinkhammer, through her counsel, Sulaiman Law Group, filed a complaint against Enhanced Recovery, alleging violations of the FDCPA and TCPA. Compl. at 1, ¶ 1. Klinkhammer had been a subscriber to Time Warner Cable and had a remaining balance when she cancelled her cable service. *Id.* ¶¶ 6, 8. Enhanced Recovery later acquired the rights to that debt. *Id.* ¶ 9. The complaint alleged that, in around April 2017, Enhanced Recovery called Klinkhammer's cell phone to collect the debt; she responded that she could not pay and requested that Enhanced Recovery stop calling her. *Id.* ¶ 11. Klinkhammer claimed that Enhanced Recovery continued to call her from different numbers, and she in turn demanded (at least five times) that they stop calling her. *Id.* ¶¶ 13-14. She alleged that she received at least 100 calls from Enhanced Recovery between the first call and the filing of the complaint in June 2017. *Id.* ¶ 15. She also alleged that when she answered, there was about a three-second period of dead air between the time she said "hello" and when she was connected to a live representative. *Id.* ¶ 16.

In early August 2017, Enhanced Recovery filed its answer and admitted that it had been retained to collect the debt from Klinkhammer, but denied allegations that it committed any of the misconduct that gave rise to Klinkhammer's FDCPA and TCPA claims. R. 11, Answer ¶¶ 9, 11-19. Enhanced Recovery also stated that it had consent to contact Klinkhammer and denied that it used an automatic telephone dialing system (ATDS) to reach her. *Id.* ¶ 26.

Discovery concluded on May 31, 2018, and one week later, Klinkhammer orally moved to voluntarily dismiss the case. 06/07/18 Tr. at 2:9-10, 2:19-21. Klinkhammer's counsel reported that two reasons motivated the voluntary dismissal. First, discovery revealed that, instead of receiving over 100 calls from Enhanced Recovery, Klinkhammer in fact received only 9 calls between April 2017 and May 2017. R. 52, Pl.'s Resp. at 3; *id.* Exh. A , Klinkhammer Decl. ¶¶ 6, 14-15. Second, at the June 7, 2018 status hearing, Plaintiff's counsel reported that recent decisions in other jurisdictions had held that the HCI LiveVox dialing system used by Enhanced Recovery does not qualify as an ATDS regulated by the TCPA. 06/07/18 Tr. at 2:13-18, 6:12-7:1. So Klinkhammer chose not to "expend [the] considerable resources and money and cost" required to hire an expert to "establish [their] claim." *Id.* at 2:16-18; *see also* Klinkhammer Decl. ¶¶ 14-16. Enhanced Recovery objected to the voluntary dismissal, requesting a ruling on whether HCI LiveVox is an ATDS. 06/07/18 Tr. at 3:22-4:2, 5:5-7:15. The Court granted the motion to voluntarily dismiss with prejudice. *Id.* at 8:14-23. In September 2018, Enhanced Recovery filed this motion for attorneys' fees in the amount of $24,354. Mot. Fees.

## II. Analysis

### A. 15 U.S.C. 1692k(a)(3)

To succeed in a motion for attorneys' fees under the FDCPA, a movant must demonstrate that the action was brought in bad faith and to harass. 15 U.S.C. § 1692k(a)(3). The Seventh Circuit has held that the party seeking fees must establish that the *entire* lawsuit, not just any one claim, was brought in bad faith and

3

for the purpose of harassment. *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 775 (7th Cir. 2003). As discussed below, the record evidence here establishes that, when she filed her complaint, Klinkhammer believed in good faith that she had a valid FDCPA claim, and only made the decision to voluntarily dismiss after learning (1) the actual (much lower) number of calls that Enhanced Recovery made to her and (2) different district courts concluded that the dialer used by Enhanced Recovery is not an ATDS.

### 1. Dismissal With Prejudice

Before examining the question of bad faith, Klinkhammer presents a threshold argument: Enhanced Recovery is not entitled to fees because Klinkhammer's claims were never adjudicated on the merits. Pl.'s Resp. at 6. Klinkhammer contends that federal courts have required a decision on the merits before a party can be awarded fees under § 1692k(a)(3). *Id.* But the plain language of 15 U.S.C. § 1692k(a)(3) says otherwise: "[o]n a finding by the Court that an action under this section was *brought* in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees … ." (emphasis added). It is true that, generally speaking, fee-shifting statutes require a legally operative change in the relationships of the parties before fees may be awarded. *See, e.g.*, 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the *prevailing party* … a reasonable attorney's fee … .") (emphasis added). Unlike most other fee-shifting statutes, however, § 1692k(a)(3) does not require that either party "prevail"—only that the action was "*brought* in bad faith and for the purpose of harassment," § 1692k(a)(3) (emphasis added). What's more, the cases on

which Klinkhammer relies only address whether motions for fees under § 1692k may be asserted as counterclaims (which may be advanced even when the plaintiff's claim is pending) or instead are motions for fee-shifting after entry of judgment (which must await dismissal of the plaintiff's claim). *See Kropf v. TCA, Inc.*, 752 F. Supp. 2d 797, 801 (E.D. Mich. 2010); *Chlanda v. Wymard*, 1994 WL 583124, at *1 (S.D. Ohio Aug. 16, 1994). Neither *Kropf* nor *Chlanda* addressed whether a dismissal with prejudice—versus another form of termination of the case, such as a dismissal without prejudice—was required for a motion to be brought under § 1692k(a)(3). So there is no case law that outright contradicts the plain text of § 1692k(a)(3), which requires only that the claim was "brought" in bad faith and to harass.

In any event, even if an adjudication on the merits is required before seeking fees under the statute, a dismissal with prejudice satisfies that requirement. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("Rule 41(a), which, in discussing the effect of voluntary dismissal by the plaintiff, makes clear that an adjudication upon the merits is the opposite of a dismissal without prejudice.") (cleaned up);[3] *Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005) ("Here, the language of the district court's judgment makes it clear that a decision on the merits has been rendered: [plaintiff's] claims were dismissed *with prejudice*.") (emphasis in original); *Fed. Election Comm'n v. Al Salvi for Senate Comm.*, 205 F.3d 1015, 1019 (7th Cir. 2000) (treating dismissal with prejudice as a dismissal on the

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

merits). This makes sense because when a dismissal is with prejudice, the plaintiff is foreclosed from ever asserting the claim, so the defendant indeed has prevailed because the legal status between the two parties has been altered by the dismissal with prejudice.

## 2. Bad Faith

In pursuing a motion for fees under § 1692k(a)(3), the defendant bears the burden of proving bad faith. Enhanced Recovery contends that Klinkhammer made baseless FDCPA allegations against it and that the Sulaiman law firm did not investigate the claim before filing the complaint. Mot. Fees at 5-6, 8-9. Enhanced Recovery did not request an evidentiary hearing on this motion, so the record consists solely of the filings and declarations on the docket. According to Klinkhammer's declaration, "[i]n April 2017, [she] started receiving collections calls from various debt collectors attempting to collect a debt on behalf of Time Warner and other unknown third parties that were not known to [her]." Klinkhammer Decl. ¶ 3. She avers that she frequently answered calls from debt collectors and requested that they stop calling, but she continued to receive calls. *Id.* ¶¶ 3-5. In April 2017, Klinkhammer answered a call from Enhanced Recovery, which was a familiar name to her, and she believed that she had previously told them to stop calling her; in the April call, she reminded them to stop calling her. *Id.* ¶¶ 7-9. Klinkhammer asserts that, after this phone call, she received calls from various other debt collectors. *Id.* ¶ 10.

After discovery revealed that Enhanced Recovery had only made nine calls to Klinkhammer, she conferred with her attorneys and determined that her FDCPA

claim had been weakened, which was one important factor in her decision to voluntarily dismiss the entire action. Pl.'s Resp. at 3-4; Klinkhammer Decl. ¶¶ 6, 14.

The facts do not demonstrate bad faith. Klinkhammer received calls from other debt collectors after telling Enhanced Recovery to stop, and she admits that she "may have confused [Enhanced Recovery] with a different debt collector" because she was receiving many calls from debt collectors during the relevant time. Klinkhammer Decl. ¶¶ 3, 25. The only evidence Enhanced Recovery presents to rebut Klinkhammer's declaration of her good-faith belief that she had a valid FDCPA claim, *id.* ¶¶ 22-23, is a declaration from Enhanced Recovery's Director of Legal, Richard Landoll. But the declaration only provides additional information about the calls from Enhanced Recovery; it does not rebut Klinkhammer's averment about her confusion as to the source of the debt-collection calls. *See* Mot. Fees, Exh. B, Landoll Decl. Remember too that, for the purposes of this motion, there is no burden on Klinkhammer to show that she in fact had a valid FDCPA claim—only that she reasonably *believed* that she had a valid claim. Indeed, the burden is actually on Enhanced Recovery to show bad faith, and that burden has not been carried.

Enhanced Recovery also argues that the Sulaiman law firm did not properly investigate the allegations in the complaint. But Enhanced Recovery has not submitted any facts in support of that argument. Under Enhanced Recovery's theory, Sulaiman must not have investigated the claim because the law firm did not offer a declaration describing the investigation from one of its attorneys. R. 56, Def.'s Reply at 9-10 ("Only one conclusion can be drawn from the fact that Sulaiman has chosen

7

to never, not once, submit a declaration from the attorney who signed the complaint, or any other attorney at Sulaiman, attesting to the investigation the attorney undertook before the complaint was filed: no attorney conducted any investigation.") (cleaned up). But there is no absolute requirement that a plaintiff's lawyer submit a declaration in order to defend against a fees motion. Here, Klinkhammer's declaration states that she had "numerous phone conferences with [her] attorneys" before filing the case. Klinkhammer Decl. ¶ 13. These conversations formed the basis of the complaint, and there is no "showing that Sulaiman had reason to know [Klinkhammer] was lying or mistaken at the time of filing." *Mattson v. Enhanced Recovery Company, LLC*, 17-cv-04895, R. 50 at 4 (N.D. Ill. Oct. 11, 2018); *see also* R. 58-1, *Brown v. Enhanced Recovery Company, LLC*, 17-cv-03980 (S.D. Ind. Nov. 11, 2018).

In its reply brief, Enhanced Recovery presents five cases in which Sulaiman's clients filed similar claims alleging FDCPA or TCPA violations (or both), but then later dismissed the claims after discovery undermined the claims. Def.'s Reply at 2-7. Enhanced Recovery filed motions for attorneys' fees in each of those cases, and argues that in each, Sulaiman failed to present any evidence of a pre-filing investigation, which supposedly establishes a "pattern" of failing to investigate its clients' claims and evidences Sulaiman's bad faith.[4] *Id.* But this argument is brought

---

[4]This Court granted Klinkhammer's request for leave to file supplemental authority, which cited a recent opinion in one of the cases referred to by Enhanced Recovery, specifically, *Brown v. Enhanced Recovery*. The district court there denied a similar motion for attorneys' fees. *See* R. 60, 12/07/18 Order; R. 58, Pl.'s Second Mot. Suppl. Authority. Enhanced Recovery did not respond to the substance of the supplemental opinion, but rather pointed to several *other* similar cases or claims that Sulaiman's clients voluntarily dismissed after Enhanced

too late. In its original motion for fees, Enhanced Recovery only mentioned generically that Sulaiman had filed "over a dozen cases" alleging similar FDCPA allegations that were shown to be meritless during discovery. Mot Fees at 5. Enhanced Recovery neglected to lay out the facts or conduct any analysis until its reply brief, which was too late.[5] Def.'s Reply at 3-7.

Enhanced Recovery attempts to buttress its allegations of bad faith by pointing to Sulaiman's business relationship with Eva Street Advisors, a third-party lead generator who recruits clients for Sulaiman, and who Enhanced Recovery alleges had signed a client for Sulaiman before the client spoke to an attorney. Mot. Fees at 6-8. But Enhanced Recovery explicitly states that "there is no evidence whatsoever that Eva Street Advisers had any involvement with the plaintiff in this case." *Id.* at 8. And Klinkhammer declared that she found Sulaiman through her own internet search and filed this case after multiple phone calls with them. Klink. Decl. ¶¶ 11-13. Therefore, any alleged relationship with Eva Street Advisors is irrelevant to this motion.

Also relevant to the good-faith analysis, is that upon completing discovery and learning the facts (of when and how often Enhanced Recovery called Klinkhammer, as well as the type of LiveVox system used by Enhanced Recovery), Klinkhammer

---

Recovery filed its motion for fees. R. 61, Def.'s Resp. Pl.'s Second Mot. Suppl. Authority. Like the other cases that Enhanced Recovery raised in its reply brief, those cited in the response to the supplemental authority were advanced too late—if Enhanced Recovery wanted the Court to consider them, then it should have filed its own motion to supplement the record. In any event, the other cases are not persuasive evidence that Sulaiman knew Klinkhammer falsified or was mistaken about the facts underlying her FDCPA claim in *this* case.

[5]The same day that it filed its reply, Enhanced Recovery also filed a request for judicial notice of fourteen complaints, affidavits, and declarations it referenced in its reply. R. 57.

voluntarily dismissed the case—a strategic and reasonable response. *See, e.g.*, *Brown*, R. 58-1 at 4, 10-11 (noting that a similar voluntary dismissal was "litigation strategizing"); *c.f. Rhinehart v. CBE Grp., Inc.*, 714 F. Supp. 2d 1183, 1184 (M.D. Fla. 2010) (awarding sanctions where "a *majority* of the allegations had *no* basis in fact and then [Plaintiff] failed to dismiss *any* of the claims based on these allegations until a summary judgment motion was filed.") (emphasis in original). Here, Klinkhammer reasonably believed the allegations in her complaint were accurate, and dismissed the case upon learning of several factual errors (and the likely necessity of obtaining an expert, as discussed below). Enhanced Recovery failed to present evidence that Klinkhammer filed her FDCPA claim in bad faith and with the purpose of harassment, or that she or Sulaiman intentionally abused the judicial process.

### B. 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, a court may sanction an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" by requiring that the lawyer "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The movant must demonstrate that the attorney acted in either subjective or objective bad faith. *See Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 708 (7th Cir. 2016) ("A finding of subjective bad faith on the part of the offending attorney will support the imposition of sanctions under section 1927, but such a finding is not necessary; objective bad faith will also support a sanctions award.") (cleaned up). To demonstrate objective bad faith, the movant need only prove that the offender lawyer acted "recklessly or with indifference to the law." *In re TCI Ltd.*, 769 F.2d 441, 445

(7th Cir. 1985). Enhanced Recovery has not demonstrated that Sulaiman acted in either subject or objective bad faith, so the motion for fees under § 1927 is denied.[6]

Section 1927 applies only to *multiplying* proceedings, not the initial filing of the complaint. *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) ("Because the section authorizes sanctions only for the multiplication of proceedings, it applies only to unnecessary filings and tactics once a lawsuit has begun. We have twice expressly held that § 1927 cannot be applied to an initial pleading.") (cleaned up); *Lewis v. Trans Union LLC*, 2006 WL 2861059, at *2 (N.D. Ill. Sept. 29, 2006) (citing *Samuels v. Wilder,* 906 F.2d 272, 275 (7th Cir. 1990)) ("Section 1927 addresses prolonging litigation whereas Rule 11 of the Federal Rules of Civil Procedure addresses particular filings and therefore, unlike Rule 11, Section 1927 does not require reasonable investigation. … Only [Plaintiff's counsel's] conduct after the suit was instituted is relevant to whether sanctions should be imposed under Section 1927."). Enhanced Recovery primarily focuses on the initial complaint as the basis for its § 1927 motion, but the statute does not apply to that first pleading.

As to post-complaint litigation, on the FDCPA claim—after learning during discovery that Enhanced Recovery probably stopped calling Klinkhammer after she requested that they stop (meaning her FDCPA claim was likely no longer viable)—Klinkhammer conferred with her attorneys, who then voluntarily dismissed the case on her behalf. Klinkhammer Decl. ¶¶ 14-16, 25-26. As discussed earlier, Enhanced

---

[6]Enhanced Recovery also argues that the Court should invoke its inherent powers "if the court finds that the party acted in bad faith, vexatiously, wantonly, or for oppressive purposes." Mot. Fees at 13 (internal citations omitted). In light of the other fee-shifting and sanctions statutes applicable to this case, there is no need to separately invoke this authority.

11

Recovery does not present any evidence that Sulaiman had reason to believe that Klinkhammer's FDCPA claim was not valid when discovery began. Had Sulaiman continued pursuing the FDCPA claim after discovery undermined it, the law firm might very well have vexatiously multiplied the proceedings. *See Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (interpreting § 1927 "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable") (cleaned up). But that did not happen, so Sulaiman is not subject to sanctions for pursuing Klinkhammer's FDCPA claim through discovery.

On the TCPA claim, Enhanced Recovery alleges that Klinkhammer lacked a basis for that claim because "Sulaiman knew from discovery in … other cases and from discussions with [Enhanced Recovery] officials that [Enhanced Recovery] used an HCI Live Vox phone system" and that "Sulaiman knew that every court which has decided the issue has ruled that the HCI LiveVox system is not an ATDS." Mot. Fees at 9 (cleaned up). But the circumstances here do not show subjective or objective bad faith. No federal court of appeals (let alone the Seventh Circuit) has ruled on whether HCI LiveVox is an ATDS, and the issue is still being litigated around the country. So the only cases that Enhanced Recovery relies on are nonbinding district-court decisions: "the relevant case law Defendant identifies does not render inescapable the conclusion that HCI LiveVox is a non-automatic dialer."[7] *Mattson*, 17-cv-04895, at 5; *see also* R. 48, 06/07/18 Tr. at 3:5-6 (Enhanced Recovery's counsel admitted that "the

---

[7]The only in-Circuit case that has held HCI LiveVox is not an ATDS was issued after Klinkhammer filed her complaint. *Arora v. Transworld Sys. Inc.*, 2017 WL 3620742 (N.D. Ill. Aug. 23, 2017); Compl. (filed June 30, 2017). But even if it had been decided before the filing of Klinkhammer's complaint, it is not *binding* authority.

12

rulings that have been rendered in other courts are not necessarily binding"). And pursuing a claim based on an undecided question of law does not necessarily establish bad faith. *See TCI Ltd.*, 769 F.2d at 445 (a lawyer acts in bad faith if he or she "act[s] in the teeth of what he knows to be the law"); *see also Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 97 (2d Cir. 2010) (where the merits of a case relied upon a previously undecided question of law, the court emphasized that "[t]he assertion of the claim did not by itself prove bad faith" for purposes of 15 U.S.C. § 1692k(a)(3)); *Brown*, R. 58-1 at 9 (denying a motion for attorneys' fees by Enhanced Recovery in nearly identical circumstances because the plaintiff "and her counsel were entitled to litigate that issue in this forum and the fact that they chose to do so by filing the TCPA claim is in no way indicative of bad faith").

What's more, when Klinkhammer's complaint was filed, Sulaiman had not yet deposed a representative of Enhanced Recovery in any case and therefore did not know that Enhanced Recovery *exclusively* used the HCI LiveVox system. Pl.'s Resp. at 8. And LiveVox provides some services that are considered an ATDS, so it was not unreasonable for Sulaiman to investigate during discovery which LiveVox service Enhanced Recovery used when it called Klinkhammer. *Id.* (citing *Bianchi v. Bronson & Migliaccio, LLP,* 2010 WL 11505439, at *2 (S.D. Fla. May 27, 2010) ("The undisputed evidence in this case shows that LiveVox is a fully-automated dialing service.")).

Finally, Enhanced Recovery argues that the voluntary dismissal itself is evidence of bad faith. Mot. Fees at 10-11. But in light of the recent decisions holding

13

that HCI LiveVox is not an ATDS, Klinkhammer concluded that she would have to hire an expert—at significant expense—to prove her TCPA claim. Klinkhammer Decl. ¶¶ 15-16; 06/07/18 Tr. at 2:13-18. That reasoning is sensible and not persuasive evidence of vexatious multiplication of the case. The dismissal makes even more sense when viewed in light of the discovery showing that Enhanced Recovery called Klinkhammer only nine times instead of 100. The TCPA allows for recovery of up to $1,500 for each call made using an ATDS, 47 U.S.C. § 227(b)(3), so the maximum recovery fell from $150,000 to $13,500. Under these circumstances, Enhanced Recovery has not proven that the Sulaiman law firm acted vexatiously.

### III. Conclusion

Enhanced Recovery's motion for attorneys' fees under 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927 is denied. The status hearing of February 15, 2019 is vacated.

ENTERED:

　　　s/Edmond E. Chang　　　
Honorable Edmond E. Chang
United States District Judge

DATE: January 3, 2019

14